**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| CATHERINE AND RICHARD SNYDER, | ) | |
| *Pro Se* Plaintiffs, | ) | |
| v. | ) | No. 1:07-cv-469 |
| GREENBERG TRAURIG, LLP, *et al.* | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

On December 8, 2006, Defendants Harley Lewin, Janet Shih Hajek and Steve Wadyka (collectively, "the Attorneys") accompanied by three Herndon, Virginia police officers, executed a lawful *ex parte* seizure order, entered the previous day by The Honorable James C. Cacheris, at the home of Plantiffs Catherine and Richard Snyder. Catherine Snyder had been selling counterfeit Diane von Furstenberg ("DVF") dresses on eBay without DVF's consent or authorization.[1] During the execution of the Order, the Attorneys recovered 54 counterfeit DVF counterfeit dresses; Ms. Snyder delivered another nine counterfeit dresses to the Attorneys on December 13. On December 21, DVF and Ms. Snyder—the primary defendant in the counterfeiting action and then represented by counsel—entered into a stipulated preliminary injunction that continued the restraints imposed by Judge Cacheris in his initial *ex parte* seizure order. And on June 25, 2007, Judge Cacheris denied Ms. Snyder's motion to dismiss in that action and permitted DVF's case against her to proceed. No one disputes any of this.

[1] DVF has sued Ms. Snyder for trademark counterfeiting, infringement and dilution and related claims, which action is now pending before Judge Cacheris in this Court. *See Diane von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356 (E.D. Va.).

Now, six months after that lawful seizure order was executed, Plaintiffs have filed a Complaint against the Attorneys and their law firm, Greenberg Traurig, LLP ("GT"), alleging that the Attorneys exceeded the scope of Judge Cacheris's seizure order and that, in doing so, they violated Plaintiffs' constitutional rights, caused Plaintiffs to suffer extreme emotional distress, and abused the judicial process of the Eastern District of Virginia. Even when all of Plaintiffs' allegations are taken as true and viewed in the light most favorable to them, *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 338 (4th Cir. 2006), Plaintiffs have still failed to state any claim upon which relief could be granted. First, Plaintiffs have not alleged and cannot allege that GT and the Attorneys are "state actors" capable of violating Plaintiffs' constitutional rights. Second, Plaintiffs have not pled the requisite elements necessary to state a claim for intentional infliction of emotional distress. Third, Plaintiffs have not sufficiently alleged that the Attorneys abused the judicial process by executing a lawfully obtained *ex parte* seizure order. Accordingly, GT and the Attorneys respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice. *See* Fed. R. Civ. P. 12(b)(6).

## I. The Alleged Private Misuse of a Valid Court Order Does Not Constitute State Action and Is Thus Not Actionable Under 42 U.S.C. § 1983

Plaintiffs have not alleged facts sufficient to sustain either of their two counts under 42 U.S.C. § 1983. The first count alleges that, by allowing a *New Yorker* reporter to witness the execution of the seizure order, GT and the Attorneys violated their Fourth Amendment rights. Compl. ¶¶ 13, 14. The second count alleges that the Attorneys seized certain "private papers and personal belongings" that were outside the scope of the seizure order, and in so doing, committed a "tortuous [*sic*] breach of Plaintiffs['] inherent right to privacy under the Constitution of the United States of America." *Id.* ¶¶ 20, 21. The Court should dismiss Plaintiffs' Section 1983 claims because they have not alleged and could not allege that the Attorneys and GT are "state

actors" under applicable law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982); *Field Auto City v. General Motors Corp.*, 476 F. Supp. 2d 545, 555 (E.D. Va. 2007). Because the Attorneys and GT are not "state actors," they cannot be sued for alleged violations of Plaintiffs' constitutional rights.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. Section 1983's "'under color of law' requirement is equivalent to the Fourteenth Amendment's 'state action' requirement." *Field Auto City*, 476 F. Supp. 2d at 554 (citing *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 341 (4th Cir. 2000)). The Supreme Court has held that state action requires two things:

> *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). In other words, a plaintiff must prove both a constitutional harm *and* that the harm was inflicted by someone whose conduct is "fairly attributable to the State," *id.*; if either requirement is not met, the Section 1983 claim must fail.

Here, Plaintiffs challenge the Attorneys' execution of the order, alleging that they were harmed because the Attorneys "far exceeded the scope of the Courts [*sic*] Order." Compl. ¶ 20; *see also id.* ¶ 14 (accusing GT and the Attorneys, not the court or the police, of "inviting a member of the media along while executing a search and seizure warrant on private citizens"). Plaintiffs' Section 1983 claims must fail precisely because their Complaint alleges at most only

GT's and the Attorneys' *misuse* of the seizure order, which does not transform them into state actors liable under Section 1983.[2]

It is black-letter law that a private party's alleged misuse of a valid court order or state law does not constitute state action. *See Lugar,* 457 U.S. at 941-42 ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State."); *Field Auto City*, 476 F. Supp. 2d at 555 ("Simply put, the misuse by private litigants of a state statute or rule does not constitute state action for purposes of § 1983.").

In *Lugar,* the defendant creditor obtained an *ex parte* prejudgment attachment order against some of the plaintiff's property. 457 U.S. at 924. The order was executed by the county sheriff but ultimately dismissed after a hearing due to the defendant's failure to meet the statutory requirements for attachment. *Id.* at 925. The plaintiff then filed a Section 1983 action against the defendant, alleging that the defendant and the state had acted jointly to deprive him of his property without due process. The Supreme Court interpreted the first of two Section 1983 counts in the plaintiff's complaint as "challeng[ing] the state statute as *procedurally defective* under the Fourteenth Amendment." *Id.* at 941 (emphasis added). That count, held the Court, met the state action requirement because "the procedural scheme created by the statute obviously is the product of state action." *Id.* By contrast, defendant's second Section 1983 count, which "alleged that the deprivation of property resulted from respondents' 'malicious, wanton, willful, opressive [*sic*], [and] unlawful acts,'" did not constitute "state action." *Id.* at 940 (alterations in original). The allegedly unlawful conduct "could not be ascribed to any governmental decision" and therefore "challenge[d] only private action." *Id.* As a result, the Court held there was no cognizable Section 1983 claim based on such alleged private misconduct.

---

[2] But as explained *infra* at pp. 15-16, Plaintiffs' own allegations make clear that the Attorneys did *not* misuse the seizure order and that their execution of it fell well within its scope.

Earlier this year, this Court followed *Lugar* in rejecting a similar claim. In *Field Auto City*, the defendant creditors suspected that the plaintiff, a car dealership, had been intentionally withholding certain payments that it was required to make under the financing contract between the parties. 476 F. Supp. 2d at 548. The defendants filed a petition in detinue in state court and obtained an *ex parte* seizure order. On the day it was entered, the local sheriff executed the order by seizing the plaintiff's entire vehicle inventory and removing the vehicles from the plaintiff's lot. *Id.* at 549. At a subsequent hearing, the state court ruled that there were no grounds for the seizure, abated the order, and ordered the vehicles returned. *Id.* The plaintiff subsequently filed in this Court a Section 1983 action against the defendants. While acknowledging that "a private party's joint action with a state official may sometimes be sufficient to render the private party a state actor," the Court found, on facts before it, "no basis on which either defendant can fairly be characterized as a state actor." *Id.* at 554, 555.

The Court characterized the plaintiff's allegations as follows: "that GMAC (i) did not post a conforming bond at the time of seizure, (ii) 'secretly' corrected the nonconforming bond later, (iii) lied to the state court in order to obtain a seizure order, and (iv) violated the terms of that order." *Id.* at 555. Those allegations, said the Court, did not suffice to transform the defendants into state actors. "*Lugar* makes clear that no state action exists where it is merely alleged that a private party misused or abused a statute. In other words, there is, in this case, no facial challenge to the Virginia detinue statute; there is, instead, an allegation that the detinue statute was misused." *Id.* (citing *Lugar*, 457 U.S. at 941-42). Per *Lugar*, "this allegation does not constitute state action and plaintiff's § 1983 claim therefore fails." *Id*

Like the plaintiffs in *Lugar* and *Field Auto City*, Plaintiffs here allege that GT and the Attorneys harmed them when executing the order by going *beyond* the scope of that order.[3] Although the private misuse of a lawfully obtained order could potentially constitute violations of state or other federal laws, such misuse does not constitute *state action* in violation of the Constitution. *See Civil Rights Cases*, 109 U.S. 3, 17 (1883) ("[C]ivil rights, such as are guaranteed by the Constitution against State aggression, cannot be impaired by the wrongful acts of individuals, unsupported by State authority in the shape of laws, customs, or judicial or executive proceedings. The wrongful act of an individual, unsupported by any such authority, is simply a private wrong, or a crime of that individual….").

The Supreme Court, this Court and the courts of many other jurisdictions have flatly held that the misuse of a valid court order or state law does not transform private parties into state actors and thus expose them to liability under Section 1983. *See Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1209 (10th Cir. 2005) ("Because Plaintiffs allege nothing more than 'private misuse' of state laws, their complaint fails to satisfy the first part of the color of law test as announced in *Lugar*.") (affirming the trial court's grant of defendants' Rule 12(b)(6) motion to dismiss plaintiffs' Section 1983 action); *McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004) ("For example, there is no state action if what the plaintiff is really aiming at are the acts of private persons that are actually illegal under the statutory scheme, because then the acts do not reflect the policy of the state."); *Benn v. Universal Health Sys.*, 371 F.3d 165, 172 (3d Cir. 2004)

---

[3] Plaintiffs' Complaint includes no allegations challenging the underlying validity of Judge Cacheris's seizure order. Nor, credibly, could it—particularly given that fewer than two weeks after the seizure order was executed, Plaintiffs entered into a stipulation with DVF continuing the restraints initially imposed by the order. Moreover, any such challenge to the order would be barred by the *Noerr-Pennington* doctrine. *See IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310-313 (4th Cir. 2003); *Baltimore Scrap Corp. v. The David J. Joseph Co.*, 237 F.3d 394, 398-99 (4th Cir. 2001); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391-94 (E.D. Va. 2002).

(same); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) ("However[,] a private misuse of a statute or procedure, as alleged here, does not describe conduct which is actionable under § 1983 or *Bivens*, despite the participation of state officers in effecting statutory processes. Trela alleges no facts which show that the various state and federal officers were doing more than simply discharging the duties of their offices.") (citation omitted).[4] Accordingly, GT and the Attorneys respectfully request that this Court dismiss Plaintiffs' Section 1983 claims for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).[5]

[4] The one case that Plaintiffs cite to the contrary, *Vector Research v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996), is inapposite precisely because, unlike Plaintiffs' case, it involved a challenge to the validity of the underlying order itself—not private misuse of a valid order. *See id.* at 696. Unsurprisingly, the Sixth Circuit follows *Lugar* with respect to the private misuse issue. *See, e.g.*, *McLaughlin v. Weathers*, 170 F.3d 577, 581 (6th Cir. 1999) ("To the extent plaintiff claimed punitive damages because Weathers was allegedly motivated by 'evil motive' and was 'reckless,' we would note that in any event, such a claim is unwarranted under the guise of a § 1983 unlawful state action.") (citing *Lugar*, 457 U.S. at 940); *Revis v. Meldrum*, Nos. 06-5197/5399, 2007 U.S. App. LEXIS 8951, at *47 (6th Cir. Apr. 19, 2007) ("Revis's claim that the private-party defendants applied for the writs maliciously or without cause—such as by overstating the judgment amount owed—does not give rise to state action. Significantly, he does not challenge the constitutionality of Tennessee's execution procedures. The private-party defendants' invocation of presumptively valid state procedures therefore amounts, at most, to the sort of statutory misuse or abuse that *Lugar* specifically instructs does not give rise to state action.") (citing *Lugar*, 457 U.S. at 941).

[5] Plaintiffs also fail to allege facts sufficient to satisfy the other factor necessary for liability under Section 1983—the deprivation of a constitutional right. Plaintiffs' invasion-of-privacy claim fails because "there is no general constitutional right to privacy; rather, the 'right to privacy' has been limited to matters of reproduction, contraception, abortion, and marriage, and none of these matters is implicated in the present case." *Edwards v. City of Goldsboro*, 178 F.3d 231, 252 (4th Cir. 1999); *see also Sherman v. Jones*, 258 F. Supp. 2d 440, 442 (E.D. Va. 2003) ("[T]he Supreme Court has carefully avoided creating a broad, fundamental privacy right, noting that the matter of general individual privacy rights is an issue that should be 'left largely to the law of the individual States.'") (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). Plaintiffs' Fourth Amendment claim also fails because the mere presence of a reporter during the execution of a search warrant does not violate the Fourth Amendment. *See Brunette v. Humane Soc'y*, 294 F.3d 1205, 1211 (9th Cir. 2002). *Wilson v. Layne*, 526 U.S. 603, 614 (1999), applied

## II. Plaintiffs' Allegations Fall Far Short of the Severity Needed to Plead Intentional Infliction of Emotional Distress

In Count III, Plaintiffs allege that GT and the Attorneys' "extreme and outrageous conduct[] intentionally or recklessly caused" them and their two children to suffer "*severe* emotional distress." Compl. ¶¶ 23-24. Yet neither that bald statement nor any of the other facts that Plaintiffs allege elsewhere in the Complaint suffice to sustain a claim for intentional infliction of emotional distress under Virginia law.

In Virginia, Plaintiffs must plead and prove four elements to establish a claim for intentional infliction of emotional distress:[6] (1) "the conduct was intentional or reckless"; (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) "the emotional distress was severe." *Womack v. Virginia*, 210 S.E.2d 145, 148 (Va. 1974).[7] Because the overwhelming majority of intentional infliction of emotional distress claims are dismissed for failure to allege facts sufficient to establish the second and fourth elements, Defendants will focus on those elements here.

With respect to the second element, Plaintiffs have not alleged conduct "so extreme and outrageous as to permit recovery." *Ruth v. Fletcher*, 377 S.E.2d 412, 413 (Va. 1989). When viewing Plaintiffs' Complaint in the light most favorable to them, it would appear that they have

---

only to a decision by the *police* to invite the media as a witness, and the Supreme Court has never extended that holding to private parties.

[6] Plaintiffs ultimately must prove each element by "clear and convincing evidence." *See Poole v. Pass*, 351 F. Supp. 2d 473, 481 (E.D. Va. 2005).

[7] Plaintiffs have also failed to allege that they suffered any physical injuries accompanying their emotional distress. Claims that allege the infliction of emotional distress without accompanying physical injury are "'not favored' in the law." *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989) (quoting *Bowles v. May*, 166 S.E. 550, 557 (Va. 1932)).

alleged that the reporter's presence humiliated them and that the seizure of certain items not specifically delineated in the order distressed them. But under applicable law, even inappropriate, reprehensible, and demeaning conduct does not rise to the level of "extreme and outrageous" conduct that Plaintiffs must allege to state a valid claim.

In *Poole v. Pass*, 351 F. Supp. 2d 473, 481 (E.D. Va. 2005), the plaintiff was detained by police on suspicion of violating a municipal ordinance that made it unlawful in certain circumstances to tow vehicles. The plaintiff was detained for almost an hour, during which time she alleged that the officers "berated" her and told her that if she were arrested (on the misdemeanor violation), "her children could be taken from her." *Id.* at 476-77. Although the Court characterized the officers' conduct as "plainly inappropriate, even reprehensible," it nonetheless held that "such harassment simply cannot be said to be beyond all possible bounds of decency or utterly intolerable." *Id.* at 482. Accordingly, it granted the defendants' motion to dismiss.

In *Harris v. Kreutzer*, 624 S.E.2d 24 (Va. 2006), the Court dismissed a claim brought by the plaintiff against a clinical psychologist who conducted a physical and mental examination of her on behalf of her opponent in litigation relating to an automobile accident. The plaintiff alleged that the doctor "verbally abused [her], raised his voice to her, caused her to break down into tears in his office, stated she was 'putting on a show,' and accused her of being a faker and malingerer." *Id.* at 32 (internal quotation marks omitted). Nonetheless, the court upheld the dismissal of the plaintiff's claim, stating that "[i]nsensitive and demeaning conduct does not equate to outrageous behavior." *Id.* at 34.

In *Gedrich v. Fairfax County Dep't. of Family Services*, 282 F. Supp. 2d 439 (E.D. Va. 2003), this Court dismissed the plaintiffs' "cursory intentional infliction of emotional distress

claim" which, like the claim here, had been "made in one lone sentence with no factual elaboration." *Id.* at 474. The plaintiffs alleged that the county department of family services had wrongly taken custody of their stepdaughter for three months based on its employees' false allegations of sexual abuse against her stepfather. *Id.* at 452. But despite the plaintiffs' allegations—including, quite literally, the seizure of their daughter—the Court dismissed the claim for being insufficiently pled. *Id.* at 474.

Finally, in *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246 (W.D. Va. 2001), the court dismissed the plaintiff's emotional distress claim where he had alleged that the defendants falsely accused him of theft, used that accusation as a pretext to fire him, and circulated the accusations so as to ruin his reputation in the community. *Id.* at 265. While recognizing that "the allegations, if true, would show that the defendants engaged in unacceptable conduct and might support a finding of liability with regard to other claims," the court held that such conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotation marks and citation omitted). It concluded that those allegations were "completely insufficient to demonstrate the level of outrageousness required under Virginia law," *id.*, despite the fact that such conduct indisputably cost the plaintiff his job.

Here, Plaintiffs may well have been embarrassed and humiliated by the presence of the reporter during the search.[8] They may also have been angry and annoyed that some of the items seized were, they believed, not specifically delineated in the seizure order. Nevertheless, their allegations are plainly insufficient as a matter of law to state a claim for intentional infliction of

---

[8] *See Spiers v. Sydnor*, No. 00-1712, 2001 U.S. App. LEXIS 2770, at **3, **8-10 (4th Cir. Feb. 26, 2001) (dismissing on other grounds intentional infliction of emotional distress claim by plaintiff band instructor who was handcuffed by police officer and told "sit here and let everybody look at you" after his band failed to keep pace with the rest of a parade).

emotional distress. The presence of a reporter or the seizure of certain personal items (subsequently returned to Plaintiffs) allegedly outside the scope of the seizure order both pale in comparison to the temporary seizure of a child, as in *Gedrich*, or the permanent loss of employment, as in *Warner*, both of which have been held not to constitute the requisite "extreme and outrageous" conduct.

Plaintiffs also have failed to allege facts sufficient to meet the fourth factor—that the alleged emotional distress was severe. Other than the conclusory statement that they and their children suffered "*severe* emotional distress," Compl. ¶ 24, plaintiffs have made no specific allegations regarding that severity. Nor do the allegations made elsewhere in their Complaint support an inference that Plaintiffs suffered severe emotional distress—and allegations far more substantial than Plaintiffs' have also failed to clear that bar. Emotional distress that has been held insufficient to support a claim includes that suffered by a single mother who alleged "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" after being subjected to 340 hang-up calls by a disgruntled paramour. *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991). Similarly, the Fourth Circuit found insufficient the distress alleged by plaintiffs who asserted that suffering overt racial discrimination by defendant's employees made them "nervous, caused them stress, and resulted in an inability to adequately sleep and eat." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir. 2006). The Fourth Circuit has also reversed a plaintiff's verdict where the distress alleged by the plaintiff—being very upset, very confused, losing sleep, and feeling panicked when in the presence of police—was "insufficient to sustain a cause of action." *Spiers v. Sydnor*, No. 00-1712, 2001 U.S. App. LEXIS 2770, at **9 (4th Cir. Feb. 26, 2001).

Plaintiffs have made no allegation, and no inferences could be drawn from the allegations they *have* made, suggesting that the emotional distress they supposedly suffered was any more severe than the type routinely rejected by the courts. The Fourth Circuit has recently cautioned that only the most severe emotional distress is actionable, lest courts "become arbiters of every human interaction that cumulated in embarrassment, disappointment, or hurt feelings. Virginia law has refused to countenance this possibility…." *Denny*, 456 F.3d at 436. The anger, hurt feelings, or embarrassment Plaintiffs may have felt because, during a lawful search, items allegedly outside the scope of the seizure order were (temporarily) seized, and because a reporter was present, is simply not severe enough to warrant redress by the courts.[9]

### III. Plaintiffs Have Failed to Allege the Necessary Elements to Sustain an Abuse of Process Claim

Count Four of Plaintiffs' Complaint alleges that the Attorneys "Abused the Judicial Process" in "executing an ex-parte in the home of Plaintiffs Catherine and Richard Snyder." Compl. ¶ 26. But abuse of process is not a catch-all claim meant to establish liability for every

---

[9] Plaintiffs also fail to meet the first and third factors of an emotional distress claim. To meet the first factor, plaintiffs must allege that defendants specifically intended to cause emotional distress or "intended [the] specific conduct *and* knew or should have known that emotional distress would likely result." *Womack*, 210 S.E.2d at 148 (emphasis added). Plaintiffs have not alleged that GT and the Attorneys, by executing the lawfully obtained seizure order in furtherance of the very object for which they obtained it, specifically intended to cause severe distress. And even were the Court to accept that the execution of a lawful search order sufficed to constitute the requisite specific and intentional conduct, there is no allegation that the defendants knew or should have known that the reporter's presence, or the seizure of items not specifically delineated in the order, would have caused any emotional distress beyond that which anyone may feel when they are caught red-handed in illegal activity during a lawful search. *Cf. Ruth*, 377 S.E.2d at 416 (holding that the first factor was not met where the defendant did not specifically "set out" to cause the conduct alleged to have caused the stress).

Because there is no allegation supporting or suggesting that any emotional distress Plaintiffs suffered was more than simply that appurtenant to the distress resulting from being caught in a counterfeiting scheme during a search of their property, they also have not met the third factor—that there is a causal connection between the Attorney's allegedly improper behavior and the stress that Plaintiffs suffered.

irregularity in the execution of some judicial process. Rather, "[p]rocess is maliciously abused when it is used oppressively, *e.g.*, as a whip to force the payment of an alleged indebtedness or as a means of extortion." *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988) (internal quotation marks and citations omitted). Plaintiffs have wholly failed to allege this kind of intentional, malicious abuse of the judicial system by GT and the Attorneys. Accordingly, Plaintiffs' abuse of process claim should be dismissed.

To establish an abuse of process claim under Virginia law, "a plaintiff must plead and prove: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" *Montgomery v. McDaniel*, 628 S.E. 2d 529, 531 (Va. 2006) (quoting *Donohoe*, 369 S.E. 2d at 862); *see also Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 391 (E.D. Va. 2002) (applying Virginia law on abuse of process). If a plaintiff fails to prove (or, on a motion to dismiss, fails to plead) both prongs of that test, the claim must be dismissed. *See Eurotech*, 189 F. Supp. 2d at 391. Plaintiffs here have failed to plead either prong.

First, nowhere in their Complaint do Plaintiffs allege that the Attorneys executed the order to achieve some ulterior goal other than the one for which the order was obtained—the recovery of counterfeit DVF dresses.[10] Plaintiffs cannot meet the ulterior-purpose requirement simply by alleging that the Attorneys went beyond the scope of the order. In *Eurotech*, the plaintiffs alleged that the defendant lied in a complaint to the World Intellectual Property Organization in order to gain a tactical advantage in the proceeding. But the court held that even if the defendant did lie, that "does not save the claim, for this allegation, assuming its inaccuracy,

---

[10] As noted *supra* at footnote 3, Plaintiffs make no allegations challenging the Attorneys' *obtaining* of the underlying order, but challenge only its execution. *See* Compl. ¶ 26 (alleging abuse of process in the Attorneys' "executing an ex-parte" order).

was made *not for some ulterior purpose, but rather to protect trademark rights*." *Id.* at 391 (emphasis added). Here, there is no allegation that the Attorneys seized any items or took any actions for reasons other than pursuing valid counterfeiting claims against Ms. Snyder. Even if the Attorneys' actions could be considered beyond the order's scope, it is plainly not actionable as an *abuse of process claim* because there are no allegations of ulterior motive.

In *Microsoft Corp. v. Computer Warehouse*, 83 F. Supp. 2d 256 (D.P.R. 2000), the court granted a motion to dismiss an abuse of process claim against a party that had allegedly gone "beyond the scope of the [seizure] order by seizing, impounding and photographing articles bearing no relation at all with this action, and of which some consisted of 'personal property, confidential information and business secrets and documents.'" *Id.* at 261 (citation omitted). The court acknowledged that "in some cases the use of a similar order for the purpose of obtaining a tactical advantage in the underlying infringement action and to disrupt the alleged infringer's business for competitive reasons has been determined an ulterior or bad motive." *Id.* (citation omitted). But no such ulterior motive was alleged, "thereby… failing to establish the first element of an abuse of process claim." *Id.* at 261-62.[11] Nor would it constitute an abuse of process to use a trademark-enforcement seizure to "intimidate" alleged counterfeiters, "threaten [them] with criminal prosecution" or even "falsely accuse [them] of a crime." *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex. App. 1989). "To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled

[11] The same is true for any allegation that the presence of a reporter constituted an abuse of process. Plaintiffs do not allege that the seizure order was executed for any reason having to do with the reporter. It was executed because GT and the Attorneys believed—correctly—that Plaintiffs were selling counterfeit goods. While Plaintiffs can and do challenge the reporter's presence on other grounds, her presence simply has nothing to do with an abuse of legal process.

to do." *Id.*; *see also Elec. Lab. Supply Co. v. Motorola, Inc.*, No. 88-4494, 1989 U.S. Dist. LEXIS 16475, at *22-23 (E.D. Pa. 1989) (granting defendants' motion to dismiss plaintiffs' abuse of process claim challenging a trademark-related *ex parte* seizure order because it was "void of any allegation that the defendants have used the alleged fraudulently obtained *ex parte* seizure order for any form of extortion by means of attachment, execution, garnishment, or blackmail by means of arrest or criminal prosecution").

Plaintiffs also fail to satisfy the second prong of an abuse of process claim: that the Attorneys acted improperly "in the regular prosecution of the proceedings." *Montgomery*, 628 S.E.2d at 531 (internal quotation marks and citation omitted). Plaintiffs' Complaint lists a variety of items that Plaintiffs claim were seized "in addition to the particular items authorized by the Court." Compl. ¶ 12. But the items on Plaintiffs' list fell well within the boundaries of the seizure order. It hardly falls outside the "regular prosecution" of a seizure order executed on an alleged distributor of counterfeit DVF dresses to seize other potentially counterfeit items (such as a Marc Jacobs dress or some of Plaintiffs' personal clothing, *id.* ¶ 12). Nor, when the order specifically allows for the seizure of "the books and records relating thereto," *id.* ¶ 11.B, is it unusual to seize bills, bank statements or mortgage documents (which may help show how profitable the operation is); the passwords to the websites used to sell the allegedly counterfeit merchandise (such as eBay and PayPal); a federal tax identification number (which would help determine if the target has been paying taxes on the sales); a business license (another indication of whether the target believed what it was doing was legitimate); or birth certificates (which help establish the identity of a potentially elusive target). *id.* ¶ 12. *See, e.g., Gen. Elec. Co. v. Speicher*, 877 F.2d 531, 533, 537-38 (7th Cir. 1989) (reversing the trial court's finding that a trademark-related *ex parte* seizure exceeded the scope of an order that, like the order in the

instant case, authorized the seizure of "'all books, records or documents of any kind'" related to the alleged infringement).

The execution of a seizure order, like the execution of a search warrant, necessarily involves some flexibility. In the criminal context, the Fourth Circuit has recognized that "[t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. . . . There is a *practical margin of flexibility* permitted by the constitutional requirement for particularity in the description of items to be seized." *In re Grand Jury Subpoena (Under Seal)*, 920 F.2d 235, 239 (4th Cir. 1990) (alteration in original) (emphasis added) (internal quotation marks and citation omitted); *see also Pachaly v. City of Lynchburg*, 696 F. Supp. 180, 185 (W.D. Va. 1988) ("The warrant … authorized a search for books, records, and receipts contained in the WLVA offices…. It is difficult to envision the circumstances where, pursuant to a properly issued warrant, a search for various papers would be so extensive as to exceed the scope of the warrant."). Plaintiffs have not alleged that the Attorneys seized personal belongings clearly falling outside the scope of the court's seizure order, such as their television, their car, or their cat. *Cf. Dotson v. Commonwealth*, 623 S.E.2d 414, 417 (Va. Ct. App. 2005) (stating that "the permitted scope of a search is, logically, whatever is necessary to serve the purpose of that particular search, but don't look for an elephant in a matchbox") (internal quotation marks and citations omitted). Taking Plaintiffs' allegations as true, GT and the Attorneys at most temporarily deprived Plaintiffs of a few papers and passwords that were, at best, arguably outside the scope of the court's order. That may be unfortunate, but it is not the stuff of which abuse of process claims are made.

## CONCLUSION

For the foregoing reasons, this Court should grant GT and the Attorneys' Motion to Dismiss.[12]

Dated: June 25, 2007

Respectfully submitted,

______________/s/_________________

Thomas G. Connolly
Va. Bar No. 29164
*Attorney for Defendants Greenberg Traurig, LLP, Harley Lewin, Janet Shih Hajek and Steve Wadyka*
Harris, Wiltshire & Grannis LLP
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C. 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301
tconnolly@harriswiltshire.com

---

[12] Pursuant to Local Rule 7(K), GT and the Attorneys hereby notify Plaintiffs that:

(1) They are entitled to file a response opposing the motion to dismiss and that any such response must be filed within twenty (20) days of the date on which the motion is filed;

(2) The Court could dismiss the action on the basis of Defendants' papers if the Plaintiffs do not file a response;

(3) Plaintiffs must identify all facts stated by Defendants with which Plaintiffs disagree and must set forth Plaintiffs' own version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury); and

(4) Plaintiffs are also entitled to file a legal brief in opposition to the one filed by Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that I will mail a true and accurate copy of the foregoing Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss to non-filing users and *pro se* Plaintiffs Catherine Snyder and Richard Snyder via U.S. mail on this 25th day of June, 2007, at the following address:

Catherine Snyder and Richard Snyder
603 Nash Street
Herndon, VA 20170

______/s/_____________
Thomas G. Connolly
Va. Bar No. 29164
*Attorney for Defendants Greenberg Traurig, LLP, Harley Lewin, Janet Shih Hajek and Steve Wadyka*
Harris, Wiltshire & Grannis LLP
1200 Eighteenth Street, N.W., Suite 1200
Washington, D.C. 20036
Telephone: (202) 730-1300
Facsimile: (202) 730-1301
tconnolly@harriswiltshire.com